O'Neal TERRY, Mary Jane Brown,, Steve Strickland, J.D. Hopkins, Amy Henderson, John R. Turner, Dora Latham, Grady Sanderson, Maurice Stovall, Jackie Terry, Sharon Latham, Andrew Allen, Belinda Wilkerson, Joy Suski, Lavon Wallace, Vernon Bradford, James Jett, Harold Smith, Lionel M. Sheffey and Richard Turner, Plaintiffs–Appellants,

v.

A.C. COOK, individually and in his official capacity as Sheriff of Lawrence County, Alabama; Paul D. Cain, individually and in his official capacity as Chief Deputy Sheriff of Lawrence County, Alabama; Earl "Sonny" Malcom, Jr., Coy Dwight Gray, Ferman Grimes, Randy Waldrep, Larry Louallen, and Mose Jones, Jr., in their official capacities as Chairman and members of the Lawrence County Commission, Defendants–Appellees.

No. 87–7456.

United States Court of Appeals, Eleventh Circuit.

Jan. 12, 1989.

Falkenberry & Whatley, John C. Falkenberry, Birmingham, Ala., Balske & Van

Almen, Dennis N. Balske, Montgomery, Ala., for plaintiffs-appellants.

D.L. Martin, Moulton, Ala., for A. Cook, P. Cain, D. Gray, F. Grimes, R. Waldrep, L. Louallen and M. Jones.

Webb, Crumpton, McGregor, Sasser, Davis & Alley, James W. Webb, Kendrick E. Webb, Montgomery, Ala., amicus curiae on behalf of defendants-appellees.

Morring, Schrimsher & Riley, Sharon D. Hindman, Huntsville, Ala., for defendants-appellees.

Before FAY and KRAVITCH, Circuit Judges and ATKINS *, District Judge.

ATKINS, District Judge:

This court is presented with the wholesale refusal of a newly elected sheriff to reappoint or rehire any of his predecessor's employees. The complaint alleged that the newly elected sheriff discharged the plaintiffs for political reasons in violation of 42 U.S.C. § 1983, and for racial reasons in violation of 42 U.S.C. § 1981. We affirm the district court's dismissal of the section 1983 claims of the deputy sheriffs but reverse its dismissal of the claims of the clerks, investigators, dispatchers, jailers, and process servers. We affirm the district court's dismissal of the section 1981 claim in its entirety.

The plaintiffs were deputy sheriffs, clerks, investigators, dispatchers, jailers, and process servers under the former sheriff of Lawrence County, Alabama, Dan Ligon. The defendant A.C. Cook defeated Ligon on November 4, 1986, after campaigning on a platform that promised "a change" in administration. Throughout the campaign and prior to assuming office, Cook publicly declared his intention to replace all of Ligon's employees "from the secretary and jailer up to the chief deputy," with persons who supported his elec-

tion. On January 2, 1987, approximately three weeks prior to the termination of Ligon's term, the plaintiff Terry appeared before the Lawrence County Commission as spokesman for the employees and asked the commission's assistance in preventing Cook's intended housecleaning. At the same meeting, Cook again announced his intention to replace all of the employees who had opposed his election.

The commission requested the opinion of the Alabama Attorney General but, prior to its receipt, confirmed Cook's plan. Cook took office on January 20, and, with his newly appointed chief deputy, defendant Cain, directed a notice to each plaintiff relieving him of his duties.

The plaintiffs sued Sheriff Cook and Chief Deputy Cain in their individual capacities and the sheriff, chief deputy, and the Lawrence County commissioners in their official capacities. The complaint alleged that the plaintiffs were terminated for failure to support Cook in his political race in violation of the First and Fourteenth Amendments. The plaintiffs also alleged a violation of their right to due process because they were released without a pretermination hearing. Plaintiffs Allen, Sheffey, and Stovall further alleged that their discharge was triggered by racial animus in violation of 42 U.S.C. § 1981.

The defendants moved to dismiss the original complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that the plaintiffs' employment rights expired with the term of the former sheriff. The district court dismissed the complaint and granted the plaintiffs leave to amend to allege with specificity the efforts made to regain their positions.

In the amended complaint, claim one stated generally that some of the plaintiffs had applied directly to Sheriff Cook for reappointment to their former positions and some had applied indirectly through friends or relatives. Several of the plaintiffs alleged that it would have been futile for

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

them to have applied after Cook's statements that he would not consider them for employment. Claim two alleged that Allen, Sheffey, and Stovall were the victims of race discrimination citing Cook's remark that he "didn't care whether he hired any niggers on his staff or not."

Defendants moved to dismiss the amended complaint. The court granted this motion, admonishing the plaintiffs for what it viewed as their failure to delineate which plaintiffs did and which plaintiffs did not reapply for their former positions. The court allowed the plaintiffs to amend their complaint and directed those plaintiffs who had applied directly for employment to state when, how, and for what job or appointment. The court also required that those who had not applied "allege with specificity the exact position in the newly elected sheriff's office which he (or she) would have this Court and jury fictionally presume he (or she) made application."

The plaintiffs' second amended complaint set forth detailed allegations of each plaintiff's attempt to retain or regain positions in Sheriff Cook's administration. The district court found the claims in the second amended complaint subject to the same fatal pleading deficiencies and granted the defendants' motion to dismiss with prejudice.

We must determine whether, considering the facts in the light most favorable to the plaintiffs, it appears beyond doubt that they can prove no set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## I. THE SECTION 1983 CLAIM

### A. *The Appropriate Test*

■ Public employment may not be conditioned upon requirements that violate constitutionally protected interests. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). A public employee's protection is not absolute, however. The court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. Because of the variety of situations in which critical statements may be the basis for discharge of a public employee, there is no general standard for determining in whose favor the balance is struck. Rather, the courts have developed standards which distinguish two types of cases—those involving employee expression and those involving "raw political patronage."

In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court considered the question of political patronage and weighed the balance in favor of the employees. To maintain their jobs, all of the Sheriff's Office employees were required to pledge their political allegiance to the Democratic party, work for election of Democratic candidates, contribute a portion of their wages to the Democratic party, or obtain the sponsorship of a member of the Democratic party. The plaintiffs, including the Chief Deputy of the Process Division, a process server, bailiff, and security guard, alleged that they had been discharged or threatened with discharge solely because they were not affiliated with or sponsored by the Democratic party. The district court dismissed the complaint for failure to state a claim and the court of appeals reversed. The Supreme Court affirmed in a plurality opinion in which Justice Brennan articulated the standard for weighing the conflicting interests.

> In short, if conditioning the retention of public employment on the employee's support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights.

427 U.S. at 363, 96 S.Ct. at 2685 (footnote omitted). Justice Brennan found limiting

allowable patronage dismissals to policy-making positions to be a sufficient, less restrictive means of achieving government effectiveness and efficiency and of promoting the democratic process. In a brief concurrence, Justice Stewart wrote that "[t]he single substantive question involved in this case is whether a nonpolicymaking, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs. I agree with the plurality that he cannot." *Id.* at 375, 96 S.Ct. at 2690 (citation omitted).

Several years later, the Supreme Court, again faced with the issue of political patronage, balanced the factors in favor of the discharged employees and refined the *Elrod* analysis. In *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court considered a Democratic Public Defender's discharge of two assistant public defenders because they were Republicans; all assistants retained or appointed were Democrats or were selected by the Democratic legislators or town chairman using criteria that had been outlined by the Democratic caucus. The Court reasoned that, because an assistant public defender's primary responsibility is to represent individual citizens in controversy with the state, his employment could not properly be contingent upon allegiance to the political party in control of the county government. The Court held that, under the circumstances presented, such a requirement would undermine rather than promote effective job performance. *Id.* at 519–20, 100 S.Ct. at 1295–96.

In the present case, the district court concluded that *Elrod* and *Branti* had been modified by the Supreme Court's rationale in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), in which the Court visited the question of employee expression and its effect upon continued employment. In *Connick*, an assistant district attorney had been discharged for circulating a questionnaire soliciting the views of co-workers on the office transfer policy, grievance procedures, morale, confidence in supervisors, and whether employ-ees felt pressured to work for political campaigns. The Court acknowledged the public concern raised by the issue of pressure to campaign but held that the questionnaire, considered in its entirety, related to matters of public concern in such a limited way that discharge did not offend the first amendment. In the Court's view, the questionnaire was primarily an employee grievance that concerned internal office policy whose limited first amendment implications did not outweigh the interest of the employer.

The *Connick* analysis requires that the court determine if an employee is speaking about matters of public concern and balance that interest against the employer's interest in efficiency and discipline. Although the Court noted that official pressure to campaign is a coercion of belief that violates fundamental rights, 461 U.S. at 149, 103 S.Ct. at 1691 (citing *Branti*, 445 U.S. at 515–16, 100 S.Ct. at 1294–95; *Elrod*, 427 U.S. 347, 96 S.Ct. 2673), the Court did not explore the issue of loyalty and its effect on an employee's performance; neither did the *Connick* Court equate the employer's decision to terminate the assistant district attorney with the wholesale patronage dismissal examined in *Elrod* and *Branti*.

We are troubled by the district court's synthesis of the *Elrod–Branti* and *Connick* analyses and the resulting equation of patronage cases with employee speech cases not involving patronage practices; we disagree with the district court's determination that *Connick* controls the case before this court. The factors identified in *Connick* are not relevant in cases when employees are discharged *en masse* by a prospective employer or supervisor. *See, e.g., Joyner v. Lancaster*, 815 F.2d 20 (4th Cir.1987) (discharge of one deputy sheriff by newly elected sheriff for loud and open campaign for the opposition when twenty to thirty other employees stated that deputy's activities were causing "pervasive distrust and plummeting morale" subject to *Connick* analysis); *Jones v. Dodson*, 727 F.2d 1329, 1334 n. 6 (4th Cir.1984) (raw political patronage discharge of *El-*

*rod–Branti* type properly treated as narrow, special cases; such analysis not suited to "personal, political loyalty" situations or to "employee expressions" involving insubordination or dereliction of duty having a political tinge, or, conceivably, deliberately given a political cloak). Although the cases may overlap in some areas, it is important to retain the distinction between actions that assert employees' right of expression and actions that challenge discharge decisions based on political patronage. The case before this court is an example of the latter. A wholesale refusal to retain employees who supported an opponent's election elevates political support to a job requirement. We see no practical difference between the lack of loyalty punished by Sheriff Cook in this case and the lack of party affiliation punished by the defendants in *Elrod* and *Branti*. Whether affiliated with a party or an individual, public employment in each case was absolutely conditioned upon political allegiance and not upon the content of expressions of political beliefs. Under these circumstances, the *Elrod–Branti* analysis is the appropriate one and this court must determine whether political loyalty is an appropriate requirement for employment under these circumstances.

B. *Chief Deputy and Deputies*

█ Under Alabama law, a deputy sheriff is the general agent of and empowered to enter into business transactions for the sheriff. Any transaction within the scope of the sheriff's duties may be acted upon by his deputy. *Ramsey v. Strobach*, 52 Ala. 513, 515 (1875). The deputy sheriff is the alter ego of the sheriff, *Mosely v. Kennedy*, 245 Ala. 448, 17 So.2d 536, 537 (1944) (citations omitted), and the sheriff is civilly liable for actions committed by a deputy done in the performance of his duty. *Taylor v. Gibson*, 529 F.2d 709, 716 (5th Cir. 1976); *Salter v. Tillman*, 420 F.Supp. 5, 8 (S.D.Ala.1975); *Perkins v. Hopkins*, 14 Ala. 536, 537 (1848).

At least one court has recognized that " '[i]t was never contemplated that the sheriffs of the state must perform the powers and duties vested in them through deputies or assistants selected by someone else.' " *Tanner v. McCall*, 625 F.2d 1183, 1186 (5th Cir.1980) (quoting *Blackburn v. Brorein*, 70 So.2d 293, 298 (Fla.1954)). The district court in *Whited v. Fields*, 581 F.Supp. 1444, 1456 (W.D.Va.1984), interpreting Virginia law, likewise recognized:

> Is it not then a matter of vital government interest that the sheriff have complete and absolute control and authority over who his deputy sheriff will be regardless of any first amendment limitations if he is totally responsible for the acts of his subordinates? This court is of the opinion that unless this is the exception that the Court had in mind when it laid down the *Elrod–Branti* principles, then no exception exists and the Court should have so stated. To mandate that a sheriff must accept the deputies that he finds in office simply because they belong to another political party even though he is totally responsible for all their acts is incredible, and beyond the bounds of common sense.

*Id.* We agree. The closeness and cooperation required between sheriffs and their deputies necessitates the sheriff's absolute authority over their appointment and/or retention.

Under the *Elrod–Branti* standard, loyalty to the individual sheriff and the goals and policies he seeks to implement through his office is an appropriate requirement for the effective performance of a deputy sheriff. Such a requirement strikes at the heart of the *Elrod–Branti* least restrictive means test which balances first amendment rights of the deputies and the need for efficient and effective delivery of public services. We can find no less restrictive means for meeting the needs of public service in the case of the sheriff's deputy than to acknowledge a sheriff's absolute authority of appointment and to decline to reinstate those who did not support him.

C. *The Clerks, Investigators, Dispatchers, Jailers, and Process Servers*

█ It has not been established that loyalty to an individual sheriff is an appropriate requirement for effective job perform-

ance for the remaining positions of clerk, investigator, dispatcher, jailer, and process server. This is a determination that depends upon the actual responsibilities of each position and the relationship of each to the sheriff. Indeed, in *Branti,* the Court acknowledged that the duties of the employees, who included a process server, bailiff, and security guard, were not of such character that party affiliation was an acceptable requirement for employment. 445 U.S. at 517, 100 S.Ct. at 1294. Such positions traditionally revolve around limited objectives and defined duties and do not require those holding them to function as the alter ego of the sheriff or ensure that the policies and goals of the office are implemented. Although it can be said that each job in the sheriff's office implements the policies of the office, the limited and defined roles these five positions tend to play do not support the need for political loyalty to the individual sheriff.

We thus find that it does not appear beyond doubt that the remaining plaintiffs can prove no set of facts which would entitle them to relief and remand to the district court for a determination of the actual responsibilities of each position and whether political loyalty to the elected sheriff is a reasonably appropriate requirement for the effective performance of those jobs.

### D. *The Need for Direct Application*

Our inquiry must still consider whether the remaining plaintiffs properly applied for reemployment. In *McBee v. Jim Hogg County, Texas,* 730 F.2d 1009 (5th Cir. 1984), the Fifth Circuit, sitting *en banc,* held that the first amendment does not require a new sheriff to consider for appointed positions ex-employees who do not seek reinstatement. *Id.* at 1015. The district court relied on this language and directed the plaintiffs to specify in the amended complaints whether they had applied for reinstatement.

Courts have long recognized circumstances in which a failure to apply may be overcome by facts which demonstrate the futility of such application. *See, e.g., In-*ternational *Bhd. of Teamsters v. United States,* 431 U.S. 324, 366, 368, 97 S.Ct. 1843, 1870, 1871, 52 L.Ed.2d 396 (1977) (Title VII and National Labor Relations Act recognize that failure to submit futile application does not bar relief; nonapplicant incumbent employee must show that they would have applied but for discrimination and would have been discriminatorily rejected if they had); *Franks v. Bowman Transportation Co.,* 495 F.2d 398, 418–19 (5th Cir.1974) (employer's heavy reliance on word of mouth recruiting isolated blacks or discouraged them from applying); *Bing v. Roadway Express, Inc.,* 485 F.2d 441, 451 (5th Cir.1973) (Roadway's known discriminatory practices "intimidated and discouraged" blacks from applying); *see also Simmons v. Lyons,* 746 F.2d 265, 268 (5th Cir.1984) (the plaintiffs were never discouraged from applying or told that they should not apply).

The plaintiffs alleged that they sought to retain their positions but that Cook had stated publicly that he intended to replace all of Ligon's employees. The second amended complaint detailed their direct and indirect efforts to reapply for their positions and Cook's response or lack of response to their efforts. Finally, they alleged that some of the plaintiffs were discouraged by Cook's public statements.

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a plaintiff set forth a short, plain statement of the grounds for relief. Bearing in mind the liberal pleading requirements of the Federal Rules, this court finds that the plaintiffs' allegations were sufficient to avoid dismissal. This cause is therefore remanded to permit factual development of the methods used by the remaining plaintiffs to apply for reinstatement and whether their efforts were sufficient under the circumstances. This inquiry should be sensitive to the circumstances of each individual and the propriety of the "application" should be assessed according to all of the facts and circumstances including the conduct of the parties, the sheriff's knowledge of the plaintiffs' desire for reinstatement, the local custom for gaining employment—including word of mouth recruiting—any

statements made by the sheriff which tended to encourage or discourage efforts to seek reinstatement, the size of the county, and the number of employees in the office.

### E. *The Liability of the County Commission and the Chief Deputy*

■ Under Alabama law, the County Commission is authorized to "allow the sheriff to appoint a chief deputy and as many other deputies as are needed in the discretion of the county commission." 1979 Ala.Acts 85. We can find no authority in Alabama law granting the county commission the authority to hire and fire deputy sheriffs, nor have plaintiffs offered any. By its plain language, the statute authorizes the commission to determine only the number of deputies the sheriff may appoint. The authority of the county commission to determine the number of deputies the sheriff may appoint complements the sheriff's appointment power. As such, the Lawrence County Commission's ratification of Cook's proposal to replace all Ligon employees does not render it liable for Cook's refusal to reinstate the Ligon employees. Therefore, we AFFIRM the district court's dismissal of the county commissioners.

Both the sheriff and his chief deputy may be liable for unconstitutional conduct under section 1983 when personal involvement by both officers is alleged. *See, e.g., Baskin v. Parker,* 602 F.2d 1205 (5th Cir. 1979); *Carr v. Bell,* 492 F.Supp. 832 (N.D. Fla.1980). The unconstitutional conduct plaintiffs allege is discharge for political reasons but they have not alleged that Chief Deputy Cain was involved personally in this specific conduct. They assert only that Sheriff Cook publicly stated his intent to replace plaintiffs with persons who supported his election, Second Amended complaint at ¶ 7, and to discriminate against plaintiffs because of their political activities, Second Amended Complaint at ¶ 12, but do not allege that Cain made similar statements, or that Cain engaged in any conduct indicating that his actions were politically motivated. They allege only that Cain, along with Cook, directed the notices to plaintiffs relieving them of duty, Second Amended Complaint at ¶ 13, and that either Cook *or* Cain attended the County Commission meeting in which plaintiffs sought the Commission's assistance in retaining their jobs, Second Amended Complaint at ¶ 11. Plaintiffs' allegations suggest that the chief deputy is liable for the politically motivated discharge by Cook because his name was on the notices relieving plaintiffs of duty. Therefore, we AFFIRM the district court's dismissal of Chief Deputy Cain.

## II. THE SECTION 1981 CLAIMS

■ To state a prima facie case of racial discrimination, a plaintiff must show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected, and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (footnote omitted).

The plaintiffs' claim fails on parts (ii), (iii), and (iv) of the *McDonnell Douglas* test. Plaintiffs Allen, Sheffey, and Stovall have not alleged that they applied but were rejected in spite of their qualifications, nor did they allege that the positions remained open and that Cook solicited applicants with the same qualifications. They allege only that they were interested in retaining their positions but did not apply after Cook stated that he "didn't care whether he hired any niggers on his staff or not." Second Amended Complaint at ¶ 22. The allegations contained in the second amended complaint are insufficient to state a prima facie case of racial discrimination. Therefore the district court's dismissal of the section 1981 claim is affirmed.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with the opinion of this court.

FAY, Circuit Judge, Specially Concurring:

While joining in the result reached in this matter, I write separately to clarify and emphasize certain parts of today's holding. First, I would like to emphasize what the court does not hold. The court has not said that a cause of action lies for Cook's fulfillment of a campaign promise to "clean house." Such a cause of action could not exist. Cook, as a candidate for the sheriff's office, has the right to express his complete displeasure with the administration of the previous sheriff. The voters would also have the right to expect Cook to fulfill his campaign promise to completely revamp the sheriff's office. The affected personnel in such a case would not be penalized as a result of their exercise of any constitutional rights. They would not be rehired simply because they worked for an administration the voters found in need of change. Since the decision to rehire them was not affected by the exercise (or failure to exercise) of any constitutional rights, they could not claim a constitutional violation.

A cause of action may lie in this case, however, because plaintiffs have alleged that they were not rehired because they either supported the previous sheriff or because they did not support Cook in his bid for office. If such allegations are true, then the plaintiffs are being punished for expressing their preferences between political candidates. The court correctly turns to *Elrod*[1] and *Branti* to determine whether under those circumstances there is a cause of action.[2] Since *Elrod* and *Branti* deal with punishment for affiliation with a political party, while this case deals with alleged punishment for support rendered to one political candidate, the court has properly modified the *Elrod–Branti* test to read: whether loyalty to the individual sheriff is an appropriate requirement for the effective performance of the particular position. At page 377.

I agree that a deputy is so closely associated with the sheriff that loyalty is an essential requirement for the job. Since this case comes before us under Rule 12(b)(6), I also agree that the other positions (the clerks, dispatchers, jailers, and process server) require more factual development before we can conclude as a matter of law that loyalty and trust are appropriate requirements to their effective performance.[3] It may prove true that a sheriff's office cannot function properly unless the sheriff can maintain a confidential relationship with, for example, his head jailer. However, on the limited record before us we cannot make such a determination.

1. As noted, *Elrod* was a plurality opinion. Justice Brennan joined by Justices Marshall and White wrote a "wide-ranging" opinion. It is from Justice Brennan's plurality opinion that Judge Atkins quotes so extensively. However, Justice Stewart joined by Justice Blackmun wrote a concurrence that was necessary to obtain a majority. Justice Stewart stated that *Elrod* involved a single substantive question: "whether a nonpolicymaking, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." 427 U.S. at 375, 96 S.Ct. at 2690. Justice Stewart then stated without discussion that the answer was no. It seems to me that Justice Brennan's opinion must be interpreted conservatively in light of Justice Stewart's narrower concurrence.

2. While *Connick* may not be directly on point, as Judge Atkins painstakingly points out, it still has great value in identifying some of the factors that a court must weigh when confronted by a case where government employees are not rehired as a result of their exercise of first amendment rights. *Connick* demands that we consider whether the exercise of the first amendment right—in this case support of Cook's political opponent—impacts on the employees' ability to perform the work and affects the employees' ability to maintain close working relationships with their superiors. *Connick* also demands that we weigh the employees' motives for their political support and the time, place, manner, and context in which their support was expressed. These are factors that must be weighed in all *Pickering* balancing cases of which the *Elrod* and *Branti* political patronage cases are a subset.

3. Under Alabama law these positions are co-extensive with the sheriff. *E.g.,* Ala.Code § 14–6–1 (1982) (sheriff may *appoint* a jailer). The terms of employment of each of the plaintiffs expired when ex-sheriff Ligon's term expired. In that respect there is no difference between a deputy and the other positions in question. When the incumbent sheriff was turned out of office, the employment of the entire staff terminated.

Turning finally to the question of application, I would like to stress the court's holding that all the plaintiffs must in some form or other "ask" to be rehired, unless such an action would be futile. The only question for us is whether the plaintiffs have sufficiently pled that they applied for the job or pled that an application would have been futile. In this instance, the pleadings are probably barely legally sufficient because they allege that all those who did not apply directly were deterred by Cook's frequent statements that he would not rehire anyone from Ligon's administration. However, assuming such is established, we are brought back to the key issue which must be resolved factually. Was the failure to hire the result of a legitimate campaign promise or punishment for political loyalty to the loser. Such is simply not the grist for Rule 12(b).

It seems to me that it is important to highlight that the plaintiffs must establish all of the following in order to prevail. The individual applied for employment with Sheriff Cook or proves that such would have been futile. The position sought is not one where loyalty to the incumbent is an appropriate requirement for effective performance. The failure to rehire was because of the plaintiffs' political support of the previous sheriff. Failure to prove any one of these essentials bars recovery.