KRAVITCH, Senior Circuit Judge,
specially concurring:
I join Judge Barkett’s opinion for the court, except that I take no position regarding whether the en bane court should or should not reexamine the holding of Terry v. Cook, 866 F.2d 373 (11th Cir.1989).
HARRIS, Senior District Judge,
specially concurring:
I concur in the result reached by the majority, believing, as Judges Barkett and Kravitch do, that this court’s opinion in Terry v. Cook, 866 F.2d 373 (11th Cir.1989), is controlling and necessitates affirmance. I also believe, however, that certain aspects of this case warrant additional comments, some of which reflect disagreement with respect to portions of the majority opinion.
An analysis of the legal issues inevitably begins with the unique case of Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). There, two diametrically opposed viewpoints were expressed: one by Justice Brennan, joined by Justices White and Marshall, and one by Justice Powell, joined by Chief Justice Burger and Justice Rehnquist. Thus, there were three votes one way, and three the other. Such a split, obviously, would not have been affirmatively dispositive. So, enter Justice Stewart, joined by Justice Blackmun. To create a 5-3 disposition of the case, Justice Stewart stated both briefly and clearly (427 U.S. at 374-75, 96 S.Ct. at 2690):
Although I cannot join the plurality’s wide-ranging opinion, I can and do concur in its judgment.
This case does not require us to consider the broad contours of the so-called patronage system, with all its variations and permutations. In particular, it does not require us to consider the constitutional validity of a system that confines the hiring of some governmental employees to those of a particular political party, and I *1359 would intimate no views whatever on that question.
The single substantive question involved in this case is whether a nonpolicy making, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs. I agree with the plurality that he cannot. See Perry v. Sindermann, 408 U.S. 593, 597-598, 92 S.Ct. 2694, 2697-2698, 33 L.Ed.2d 570.
It is noted that Justice Stewart characterized Justice Brennan’s opinion as a “plurality” opinion, and typically it is so labeled (or mislabeled). However, analytically it seems to me that the use of that term elevates Justice Brennan’s opinion — thoughtful as it may have been, as was Justice Powell’s opposing opinion — to a status beyond that to which it is entitled. It is my belief that Elrod v. Bums stands for what Justice Stewart said, and that Justice Brennan’s “wide-ranging opinion” does not have meaningful viability beyond the limited contours set by Justices Stewart and Blackmun. Thus, I do not believe that the majority’s reliance upon Justice Brennan’s opinion, beyond the boundaries established by Justice Stewart’s brief opinion, is justified.[1]
The next relevant case to be decided by the Supreme Court was Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). There, a true majority opinion was issued, written by Justice Stevens. The interrelationship between Branti and Elrod is intriguing. Initially, consistent with what I have suggested, Justice Stevens found it necessary to cobble together the separate opinions of Justices Brennan and Stewart in El-rod v. Bums in order to extract a holding, however limited, from that case. See, e.g., id. at 516-17, 100 S.Ct. at 1294. The case involved two Assistant Public Defenders from Rockland County, New York, who faced dismissal solely because of their political affiliation. Thus, Branti was a pure political patronage case.[2] The Court concluded that the county Assistant Public Defenders could not be dismissed based only upon their political affiliation. Justice Stewart, whose acquiescence in the judgment was essential to the decision in Elrod, dissented in Branti (as did Justices Powell and Rehnquist). His dissent began (id. at 521, 100 S.Ct. at 1296):
I joined the judgment of the Court in Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547, because it is my view that, under the First and Fourteenth Amendments, “a nonpolicymaking, noncon-fidential government employee ean[not] be discharged ... from a job that he is satisfactorily performing upon the sole ground of his political beliefs.” Id., at 375, 96 S.Ct. at 2690. That judgment in my opinion does not control the present case for the simple reason that the respondents here clearly are not “nonconfidential” employees.
In his dissent in Branti, Justice Powell noted in part (id. at 524, 100 S.Ct. at 1297):
In Elrod v. Bums, three Members of the Court joined a plurality opinion concluding that nonpolicymaking employees could not be dismissed on the basis of political affiliation. Two Members of the Court joined an opinion concurring in the judgment and stating that nonpolicymak-ing, nonconfidential employees could not be so dismissed. Notwithstanding its purported reliance upon the holding of Elrod, the Court today ignores the limitations inherent in both views. (Internal citations omitted.)
Justice Powell shortly thereafter stated (id. at 525, 100 S.Ct. at 1297):
The standard articulated by the Court is framed in vague and sweeping language *1360 certain to create vast uncertainty.[3]
Is there confusion in this area of the law? Members of the Supreme Court are among those who have expressed their belief that there is, and my study of the subject matter leads me to the same conclusion.[4] The majority in this case expresses its belief that there was “confusion” on the part of this court’s Terry panel in deciding that case. To the extent that there can be an absence of confusion in this area of the law (and I acknowledge that I consider Justice Powell’s reasoning to be more sound than that of those espousing conflicting views), I believe the Terry panel correctly decided the case before it.
Judge Barkett’s opinion for the majority states that “we also believe that Terry should be revisited en bane because it may be viewed as inconsistent with Branti.” It is implied that the way to revisit Terry is through this case. I respectfully disagree. Judge Kravitch, in her special concurrence, expressly takes no position on this question. There are several reasons for my disagreement. First, I think Terry v. Cook was correctly decided. Second, Branti was a pure political affiliation case (although, as noted, Justice Stewart dissented in Branti because he viewed Assistant Public Defenders as “clearly ... not ‘non-confidential’ employees.”) Here, appellants engaged in extensive activities on behalf of one of Cochran’s opponents.[5] In footnote 1 in his summary judgment opinion, the trial judge stated:
Although Sheriff Cochran was the Democratic candidate and Navarro ran as a Republican, affiliation with a particular party is not the issue here. Political patronage in this case refers not to political party affiliation, but rather to what other courts have described as the employees’ “commonality of political purpose and support.” See, e.g., Williams v. City of River Rouge, 909 F.2d 151, 153, n.4 (6th Cir.1990).
Third, to me there is a significant difference between a county’s Assistant Public Defender (as in Branti) and a county’s Deputy Sheriff; the former’s job is simply to defend those charged with a crime, while the latter’s responsibilities frequently involve a high degree of trust in sensitive areas of law enforcement, including possible public corruption.[6] Fourth, even if the Terry panel could be considered to have decided that ease imperfectly, the situation before us will not recur under currently existing statutory law.
*1361 Since 1995, Florida’s law has provided as follows:
30.078. Continuation of appointment after a change in sheriff
When a newly elected or appointed sheriff assumes office, the incoming sheriff may not terminate the employment of any deputy sheriff covered by ss. 30.071-30.079 for lawful off-duty political activity or for a discriminatory reason. The incoming sheriff may replace deputy sheriffs assigned to managerial, confidential, or poli-cymaking positions or part-time deputy sheriffs.
In sum, I concur in the result, and am of the belief that Terry v. Cook was decided correctly. While the decision as to whether to revisit that opinion through going en banc in this case is up to my distinguished temporary colleagues, the issue now is dealt with by statute and I believe this case should end here- — although I also believe that the subject matter cries out for elucidation from the Supreme Court in some appropriate future case.

. I believe the same is true with respects to this court’s opinion in Parrish v. Nikolits, 86 F.3d 1088 (11th Cir.1996), in which (in an opinion also written by Judge Barkett) there are numerous references to Justice Brennan’s reasoning in Elrod v. Bums.

. It should be noted that in Elrod v. Burns, the Chief Justice also wrote a dissent, beginning it by stating (427 U.S. at 375, 96 S.Ct. at 2690):
The Court’s decision today represents a significant intrusion into the area of legislative and policy concerns — the sort of intrusion Mr. Justice BRENNAN has recently protested in other contexts.

. Justice Powell went on, inter alia, to point out some of the problems raised by Branti, including a reference to how important political affiliation is to the selection by the President of United States Attorneys. (445 U.S. at 525-27, 100 S.Ct. at 1298.) Of course. Justice Powell is aware that United States Attorneys are presidential appointees who serve at the pleasure of the President. It puzzles me as to how the majority in this case can take Justice Powell's comments in a dissent in a case involving county Assistant Public Defenders, bring them into this case — which involves county Deputy Sheriffs — and volunteer dicta as to what may or may not be done with respect to the employment of Assistant United States Attorneys. See fn. 4 of majority opinion.

. This uncertainty should make a prudent court — like the panel in Terry v. Cook — reluctant to extend Branti much beyond both its factual context and the true meaning of Elrod.

. The appellants’ depositions were taken. Their principal political activities were conducted in the primary, in support of a candidate who would have faced Sheriff Cochran had he not lost in the primary. The Cutcliffe appellants (Mark and Vicki) gave money personally (perhaps the maximum of $2,000) and collected more than an additional $10,000 for Navarro. They purchased campaign tickets (barbecues, etc.) and sold them to co-workers. They put Navarro signs around their home. They and their children stuffed envelopes for Navairo’s re-election committee, and Vicki told her co-workers that Navarro would be a better sheriff than Cochran.
The Raggio appellants (George and Carole) contributed the maximum allowable amount to Navarro's campaign. Carole solicited funds from business people, and carried Navarro signs in public. She attended as many Navarro functions as she could, and recommended Navarro as the better choice, although she did not openly criticize Cochran. Other than contributing the maximum permissible to Navarro’s campaign, George Raggio did not describe his support specifically.

.The Terry v. Cook panel stated in part (866 F.2d at 377):
The closeness and cooperation required between sheriffs and their deputies necessitates the sheriff's absolute authority over their appointment and/or retention.