**Marlin Lee MILLS, Plaintiff,**

v.

**Joseph P. MEADOWS, et al., Defendants.**

**No. CIV. JFM–97–3329.**

United States District Court,
D. Maryland.

April 16, 1998.

Irwin Raphael Kramer, Owings Mills, MD, Michael D. Smigiel, Elkton, MD, for Plaintiff.

Stuart M. Nathan, Maryland Attorney General's Office, Dept. of Public Safety &

Correction, Baltimore, MD, Jefferson L. Blomquist, Bel Air, MD, for Defendant.

## OPINION

MOTZ, Chief Judge.

Marlin Lee Mills has brought this action against Sheriff Joseph P. Meadows and Harford County, Maryland ("Harford County"). Mills claims that his employment as a deputy sheriff was terminated in violation of the First and Fourteenth Amendments to the United States Constitution and parallel provisions of the Maryland Constitution. He also asserts several common law tort claims. Meadows has moved to dismiss the complaint, or, in the alternative, for summary judgment. Harford County has also filed a motion to dismiss.[1] For the reasons that follow, I will grant summary judgment in favor of defendants as to Mills' federal claims and dismiss his state law claims pursuant to 28 U.S.C. § 1367(c)(3).

### I.

Mills joined the Harford County Sheriff's Office in 1971 as an entry level deputy sheriff. Over the years Mills was promoted to the rank of deputy first class, corporal, sergeant, lieutenant, and finally captain. Mills received his last two promotions during the administration of Sheriff Robert Comes, who was elected in 1990.

In the 1994 general election Comes, a Democrat, was opposed by Meadows, the Republican candidate. Mills, as president of the Harford County Democratic Club, actively supported the Comes campaign, hosting a fundraising event on Comes' behalf at the private swim and golf club he owns and displaying Comes' campaign sign at the club. Meadows defeated Comes in the November 1994 general election and was sworn into office as Sheriff of Harford County on December 5, 1994.

Meadows has submitted an affidavit describing the background of the 1994 election as follows:[2]

> From his election in 1962 until his retirement in 1981, William J. Kunkel ("Kunkel") had been the Sheriff of Harford County, and the office enjoyed stability. Following Sheriff Kunkel's retirement, there were two one-term Sheriffs: Theodore Moyer ("Moyer") (who was appointed Sheriff upon Kunkel's retirement and elected in the 1982 general election) and Dominick Mele ("Mele") (who defeated Moyer in the 1986 Democratic primary and won the general election unopposed). Robert Comes ("Comes") ran unopposed (after Mele lost the democratic [sic] primary, he was a write-in candidate, but received very few votes, not being on the ballot) and was elected Sheriff in the 1990 general election, having defeated Mele in the 1990 Democratic primary.

> Prior to the 1994 general election, morale among the deputies was at an all time low since I had been working as an Assistant State's Attorney. Deputies were constantly complaining to me that they believed Comes and his upper level command staff were incompetent and that the office was being mismanaged. The Sheriff's Office received considerable negative press coverage as the result of an incident at the detention center, and many deputies were unhappy about the negative public image resulting from the incident and the way the Sheriff handled the incident. A number of deputies and groups of deputies approached me about running for Sheriff in the 1994 elections. I was not approached by representatives of the Republican party to run for Sheriff as the Repub-

1. Because I am considering matters outside the pleadings in resolving the issues presented, I will treat Harford County's motion as one for summary judgment in accordance with Federal Rule of Civil Procedure 12(b).

2. Mills has submitted his own affidavit denying he had any involvement in alleged mismanagement of the detention center or the Sheriff's Office as a whole. However, he has not disputed Meadows' general description of what led to

Meadows' election. In any event, factual disputes as to how well the Sheriff's Office was being managed are to be decided by the electorate, not by the courts. What is pertinent here is that Meadows could properly interpret the outcome of the election as a mandate for change, imposing upon him the responsibility to put in place a management team that could effect that change.

lican candidate. My candidacy received support within the Sheriff's Office from both Democratic and Republican deputies. Party affiliation had no significant role with respect to support of my candidacy.

When Meadows took office there were approximately 230 deputies working under his command. Of this group, the only people of equal or higher rank than Mills were Meadows himself, his chief deputy, one major, one warden, and six other captains. On December 6 and 7, 1994, Meadows met with most of the members of his upper level command staff, and with most of his lieutenants and sergeants. Meadows met with Mills on December 6, 1994. On December 19, 1994, Meadows informed Mills that he had decided not to reappoint him as a deputy in his administration.

Mills alleges that he was removed from the Harford County police force because of his political association with and campaign activity on behalf of Comes. He maintains that he had served effectively under five separate administrations and that he emphasized to Meadows that he would "serve with similar diligence and distinction under [his] administration."

Meadows counters that party affiliation was not a factor when he filled his upper level command positions. Rather, he asserts that he made those appointments based on who he perceived could best implement his policies and directives. He states, without contradiction, that of Sheriff Comes' upper level command staff, four were retained, two or three retired, and two or three (including Mills) were dismissed.[3] Both the group whom Meadows retained and those whom he newly appointed included members of the Democratic party. As to Mills himself, Meadows asserts that several factors led to his decision not to reappoint him, including Mills' loyalty to Comes, what Meadows perceived as Mills' failure to express loyalty to him, what Meadows perceived as Mills' mismanagement of the detention center and the Sheriff's Office budget, and a reluctance to work with Mills expressed by many of the

rest of the upper level management team assembled by Meadows.

Mills' complaint contains eleven counts. Counts One through Four assert claims pursuant to 42 U.S.C. § 1983, alleging violations of various First Amendment and Fourteenth Amendment rights. Count Five states a claim for conspiracy under 42 U.S.C. § 1985. Counts Six, Seven, Eight and Eleven assert pendent state common law claims for wrongful discharge, negligent misrepresentation, intentional misrepresentation and intentional infliction of emotional distress, respectively. Count Nine seeks injunctive relief and Count Ten alleges violations of the Maryland Constitution.

## II.

Discovery has not yet been conducted, and the first question I must decide is whether summary judgment is appropriate at this stage of the proceedings. In my judgment it is appropriate. Whatever factual disputes exist are not material to the ultimate resolution of the issues. The record as it presently exists establishes that Mills held a position with the Sheriff's Office that was sufficiently high and powerful that it was reasonable and constitutionally proper for Meadows to replace him with an officer of his own choosing. In reaching this conclusion I am mindful of the concern expressed by the Fourth Circuit that litigation of this kind has the potential of "diverting sheriffs' attention from the important public safety issues in their communities." *Jenkins v. Medford,* 119 F.3d 1156, 1164 (4th Cir.1997) (en banc).

## III.

42 U.S.C. § 1983, upon which Counts One through Four are based, requires a plaintiff to establish a deprivation of a right secured by the Constitution or a federal statute. Mills asserts that his rights to free association and free speech, secured by the First and Fourteenth Amendments, have been violated.

---

**3.** The uncertainness of the retirement/dismissal figures depends upon how Colonel Thomas

Broumel, who had been Comes' second-in-command, is classified.

## A.

■ In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court declared that as a general proposition it is unconstitutional for government employees to be dismissed because of their political affiliation. Both cases were decided against the background of the traditional practice in many political subdivisions of staffing public offices with patronage appointments. In *Elrod* the Court carved out an exception for employees holding "policymaking" positions. *See Elrod*, 427 U.S. at 367. In *Branti*, while holding that assistant public defenders were not subject to patronage dismissals, the Court modified the *Elrod* exception, stating that "the ultimate inquiry is not whether the label 'policymaker' . . . fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518.

The Fourth Circuit has applied the *Elrod–Branti* exception and held that "newly elected or re-elected sheriffs may dismiss deputies . . . because of party affiliation." *Jenkins*, 119 F.3d at 1164. *See also Upton v. Thompson*, 930 F.2d 1209, 1218 (7th Cir. 1991) (recognizing right of sheriff to rely upon political considerations when determining who will serve as deputies); *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir.1989) (recognizing sheriff's absolute authority to decline to reinstate deputies who did not support him in election). The court reasoned that political affiliation "serves as a proxy for loyalty to the sheriff," and that loyalty is an appropriate job requirement that a sheriff may consider when filling positions resembling "a policymaker, a communicator, or a privy to confidential information." *Jenkins*, 119 F.3d at 1164 (internal citations omitted). The court reached its conclusion after conducting a detailed inquiry into the specific roles of the sheriff and deputies at issue in the case. *See id.* at 1163–64.

It is clear from the facts of this case that Mills' position within the Sheriff's Office was that of "a policymaker, a communicator, or a privy to confidential information," *see id.* at 1164 (internal citations omitted), and that his loyalty was a requirement appropriately considered by Meadows. As a captain, Mills was a highly placed official in the Comes administration. Though he denies being a part of Comes' upper level command staff, the record is clear that only a handful of individuals within the 230–member agency had attained an equal or higher rank. As a result he necessarily served as a link between the sheriff and the deputies in the agency, and played a significant role in the implementation of the sheriff's policies. Thus, Meadows could lawfully terminate Mills for political reasons under the *Elrod–Branti* exception to prohibited political terminations.

## B.

Mills asserts a related First Amendment claim that must be separately considered. A government may not take adverse action against an employee for exercising his First Amendment rights. *See, e.g., Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education of Township High School Dist.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Here, Mills alleges that Meadows terminated his employment not only because of his political affiliation but also because he had actively campaigned for Mills' opponent. In such a case it appears that a court should engage in an analysis under *Pickering* and *Connick* as well as under *Elrod* and *Branti*. *See O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 116 S.Ct. 2353, 2357–58, 135 L.Ed.2d 874 (1996).

■ *Pickering* and *Connick* establish a two-step test to determine whether the speech of a public employee is constitutionally protected. First, the court must inquire whether the employee spoke on a matter of public concern. *See Connick*, 461 U.S. at 146–48. If so, the court must then balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. The

entire balancing process is an inquiry of law for the court. *See Joyner v. Lancaster*, 815 F.2d 20, 23 (4th.Cir.1987).

In *Jenkins*, 119 F.3d at 1164, the Fourth Circuit did not apply the *Pickering–Connick* test in determining that the defendant had properly discharged the deputy sheriff plaintiffs. However, in *Joyner*, 815 F.2d at 20, the court did apply *Pickering–Connick* to uphold the dismissal of a deputy sheriff whose employment was terminated because he campaigned on behalf of the incumbent sheriff's opponent. In that case, the deputy dismissed was one of four captains in a department of some 150 deputies, and he had only two superiors. *See id.* at 21. Noting the importance of the deputy's role in the operations of the department and implementation of the sheriff's policies, the court concluded that "mutual confidence and loyalty [between a sheriff and deputies] are of great importance," and approved the dismissal. *Id.* at 24.

■ There is no question that in this case Mills engaged in speech involving a matter of public concern. I find, however, that the interests of the public and Meadows in the effective and efficient fulfillment of the responsibilities of the Sheriff's Office outweighed Mills' interest in exercising his First Amendment rights. Like the plaintiff in *Joyner*, Mills was a high-ranking official in his department. He had very few superiors. Whatever his actual duties, by virtue of his rank Mills necessarily played a visible role in the administration, one with the concomitant ability to facilitate (or impede) the effective implementation of the sheriff's policies. Understandably, Meadows desired to fill such a role with an individual he perceived to be both loyal and likely to command the respect of the deputies in the office who were his subordinates. He deemed Mills not to be such an individual, and thus declined to reappoint him as a deputy in his administration. That decision was not an unreasonable one. *See O'Hare Truck Service, Inc.*, 116 S.Ct. at 2358.

## IV.

### A.

In Count Five, which states a claim for conspiracy under 42 U.S.C. § 1985, Mills alleges that Meadows and other Harford County officials conspired to violate his constitutional rights. This claim also fails. Mills' allegations are made under § 1985(3). To state a cause of action under that section, plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (internal citations omitted). The record in this case is devoid of any allegation of such conduct, which is necessary to trigger the proscription of § 1985(3).

### B.

In light of my rulings dismissing all of Mills' federal claims, I will decline to exercise supplemental jurisdiction over Mills' state law claims and will dismiss them. *See* 28 U.S.C. § 1367(c)(3).

A separate order effecting the rulings made in this Opinion is being entered herewith.

### ORDER

For the reasons stated in the Memorandum entered herewith, it is, this 16th day of April 1998

ORDERED

1. The motion to dismiss or for summary judgment filed by defendant Joseph P. Meadows is treated as one for summary judgment as to Counts One through Five and is granted as such;

2. The motion to dismiss or for summary judgment filed by defendant Meadows is treated as a motion to dismiss as to Counts Six through Eleven and is granted as such;

3. The motion to dismiss filed by defendant Harford County, Maryland, is treated as a motion for summary judgment as to Counts One through Five and is granted as such;

4. The motion to dismiss filed by defendant Harford County, Maryland, is granted as to Counts Six through Eleven;

5. Judgment is entered in favor of defendants against plaintiff as to Counts One through Five; and

6. Counts Six through Eleven are dismissed pursuant to 28 U.S.C. § 1367(c)(3).