NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**ADRIA GHARATI,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

_____

2022-2146

_____

Petition for review of the Merit Systems Protection Board in No. AT-1221-13-4692-C-1.

_____

Decided: May 30, 2024

_____

DANIEL MEIER, Meier Law Group PLLC, Durham, NC, for petitioner. Also represented by PETER LOWN, Peter C. Lown, P.C., Stockbridge, GA.

SONIA W. MURPHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, DOUGLAS GLENN EDELSCHICK, PATRICIA M. MCCARTHY.

_____

Before PROST, TARANTO, and HUGHES, *Circuit Judges*.

PROST, *Circuit Judge*.

Ms. Adria Gharati appeals a Merit Systems Protection Board ("MSPB") order granting the Department of the Army's ("Army") petition for review and dismissing Ms. Gharati's petition for enforcement of the April 21, 2016 initial decision of the Administrative Judge ("AJ"), which became final on May 26, 2016. *Gharati v. Dep't of the Army*, No. AT-1221-13-4692-C-1, 2022 WL 2254009 (M.S.P.B. June 22, 2022) ("*Board Decision*"). For the reasons below, we affirm.

## BACKGROUND

In January 2011, Ms. Gharati was hired for a four-year term position as a Latent Print Examiner/Fingerprint Specialist with the U.S. Army Criminal Investigation Laboratory in Ft. Gillem, Georgia. Appx. 39, 43.[1] Shortly after being hired, she deployed for six months to an agency laboratory in Afghanistan. Appellant's Br. 7. Ms. Gharati was promoted to a GS-12 Fingerprint Specialist, which entitled her to a new four-year term starting on May 20, 2012. Appx. 2, 44. During Ms. Gharati's second deployment to Afghanistan, she became "concerned about the lack of competence of a contract fingerprint examiner" and "possible destruction of evidence by a contract employee." *Id.* at 8. She reported her concerns to the laboratory manager and his superiors. During the investigation of these reports, Ms. Gharati was removed from her assignment in Afghanistan, reassigned to Ft. Gillem, Georgia, and constructively terminated from her position in the Army. Appx. 51–53; Appellee's Br. 2. Ms. Gharati resigned on November 30, 2012. Appx. 55.

---

[1]    "Appx." refers to Petitioner's Appendix. *See* Petitioner's Appendix (Apr. 6, 2023), ECF No. 27.

In August 2013, Ms. Gharati filed an Individual Right of Action appeal with the MSPB, alleging that the Army took adverse personnel action against her in retaliation for protected whistleblower activity that took place in Afghanistan. The AJ agreed, finding that Ms. Gharati had established that her whistleblower activity was a contributing factor to the Army's decision to reassign her to Ft. Gillem and constructively terminate her. The AJ ordered the Army "to cancel the reassignment and removal and to retroactively restore [Ms. Gharati] effective November 30, 2012" and "to pay [Ms. Gharati] . . . for the appropriate amount of back pay." Appx. 73 ("*First AJ Decision*"). Neither party appealed the initial decision, and it became final on May 26, 2016.

In June 2016, Ms. Gharati filed a petition for enforcement, alleging, among other things, that the Army failed to comply with the *First AJ Decision* because it failed to reinstate her to active employment. First, Ms. Gharati argued that, because she had 42 months remaining on her four-year term position when she was constructively terminated, the Army should be required to restore her to that position to serve out the remaining months. *See Board Decision*, 2022 WL 2254009, at *1. The Army responded that Ms. Gharati's four-year term appointment would have ended by May 20, 2016 (before the *First AJ Decision* became final) and that it had already paid her back pay for the unserved remainder of the four-year appointment. *See id.*

Second, Ms. Gharati argued that another means of enforcing the *First AJ Decision* would have been to grant her a permanent position with the Army because "but for the agency's unwarranted personnel action" she would have continued her active employment with the Army and would have been selected for a permanent position. Appx. 22. The Army responded that Ms. Gharati had failed to apply for any of the ten fingerprinting-specialist vacancies between October 2014 and October 2016 and, thus, "whether

the appellant would have been selected for one of the ten permanent vacant positions is speculative." Appx. 23. Ms. Gharati responded that she did not apply because she felt her efforts would have been futile, given her ongoing litigation with the Army concerning her whistleblowing activity. *See* Appx. 22. Because "it was to some degree a matter of speculation as to whether she actually would have been hired," the AJ ordered the Army to "reconstruct the selection process" for the ten fingerprint-specialist vacancies between October 2014 and October 2016 to determine whether Ms. Gharati would have been eligible and hired into one of those positions. Appx. 23–24. The Army objected to the reconstruction process, explaining that it lacked the resources to implement it. Based on this refusal, the AJ found "it appropriate to draw an adverse inference that had the agency reconstructed the selection process . . . and considered [Ms. Gharati's] application, it would have determined that [she] would have been selected for the position." Appx. 25. The AJ then determined that the Army failed to comply with the *First AJ Decision* and ordered the Army to place Ms. Gharati "in a permanent Latent Print Examiner position . . . retroactive to the date of hire of the first vacancy announcement." Appx. 27 ("*Second AJ Decision*").

The Army filed a petition for review by the full MSPB, arguing that the *Second AJ Decision* would operate to place Ms. Gharati in a better position than she was at the time of the Army's wrongful action and that the AJ abused her discretion by requiring the Army to reconstruct the selection process. *Board Decision*, 2022 WL 2254009, at *3. Ms. Gharati moved to dismiss the petition for review, arguing that the Army was required, but failed, to include evidence of its compliance with the interim relief order with its petition. Appellant's Br. 14–15. The MSPB determined that the Army had complied with the orders in the *First AJ Decision* and that placing Ms. Gharati in a permanent position exceeded the relief ordered in the *First AJ Decision*.

*Board Decision*, 2022 WL 2254009, at \*3–5. The MSPB then dismissed Ms. Gharati's petition for enforcement and granted the Army's petition for review. *Id.* at \*6.

Ms. Gharati timely appealed. Both parties waived oral argument, and the case was submitted on the briefs. We ordered supplemental briefing, asking each party to address specific questions related to Ms. Gharati's requested relief to be placed in a permanent position with the Army. *See* Order (Dec. 14, 2023), ECF No. 45.

We have jurisdiction under 28 U.S.C. § 1295(a)(9).

### DISCUSSION

On appeal, Ms. Gharati argues that the MSPB erred by: (1) failing to grant her motion to dismiss based on the Army's failure to provide a certificate of compliance with its petition for review; (2) failing to place her, as nearly as possible, into the situation she would have been in but for the Army's wrongful action; and (3) concluding that back pay was a permissible substitute for employment. We address each argument in turn.

We must affirm the MSPB's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The petitioner bears the burden of establishing error in the Board's decision." *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

### I

Ms. Gharati first alleges that the MSPB failed to rule on her motion to dismiss, in which she argued that the Army's failure to include a certificate of compliance with its petition for review requires dismissal. Appellant's Br. 14–15. But the MSPB did rule on Ms. Gharati's motion to dismiss. *Board Decision*, 2022 WL 2254009, at \*3 n.3

(denying the motion because the appeal of the *Second AJ Decision* did not require a certificate of compliance).

On the merits, the parties agree that "[i]f the appellant was the prevailing party in the initial decision *and the decision granted the appellant interim relief*, any petition or cross petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order." 5 C.F.R. § 1201.116(a) (emphasis added). But, as explained above, there are two initial decisions involved in these proceedings—only the *First AJ Decision* ordered interim relief. *Compare* Appx. 73–76, *with* Appx. 27–29. The Army filed a petition for review of the *Second AJ Decision*, which did not contain an interim relief order. *See* Appx. 27–34. Therefore, no certificate of compliance was required, and the MSPB did not err in denying Ms. Gharati's motion to dismiss.

II

Ms. Gharati next argues that the MSPB erred by not requiring the Army to appoint her to a permanent position.

When the MSPB finds that an agency has engaged in wrongful personnel practices, the MSPB "shall order such corrective action as the Board considers appropriate." 5 U.S.C. § 1221(e)(1). "If the Board orders corrective action under this section, such corrective action may include—that the individual be placed, as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred . . . ." § 1221(g)(1)(A)(i).

The *Second AJ Decision* ordered the Army to place Ms. Gharati in a permanent position "retroactive to the date of hire of the first vacancy announcement." Appx. 27. Here, Ms. Gharati argues that the purpose of that order was "to place [her] as nearly as possible to the circumstances she would have been in but for the agency's unwarranted personnel action." Appellant's Br. 17. In Ms. Gharati's view,

this would require the Army to reinstate her to a permanent position because "but for the Agency's wrongful actions she would have been selected for a permanent position." *Id.* at 16. Specifically, Ms. Gharati alleges that "[g]iven that there were 10 permanent positions that came available during the relevant time period, [she] is able to clearly establish that she would have received one of those positions, and is therefore entitled to be reinstated to one of those permanent positions." *Id.* at 18. But Ms. Gharati acknowledges that she did not in fact apply for any of these ten vacancies. Instead, she argues that "she reasonably believed that she did not have a realistic chance of being selected" due to her ongoing litigation with the Army but asserts that if she had applied, she would have received one of those positions. *Id.* at 17. The MSPB rejected Ms. Gharati's request for a permanent position, concluding, in part, that her failure to apply for any of the ten vacancies was "fatal" to her claim. *Board Decision*, 2022 WL 2254009, at *5.

To the extent the MSPB concluded that a potential applicant's failure to apply for a position *categorically* forecloses relief concerning such a position, we do not agree. Indeed, there may be certain circumstances in which applying to a position may be futile, and a wronged individual could still be entitled to relief despite not applying for a vacant position. For example, in *International Brotherhood of Teamsters*, a case brought by the United States under Title VII against an employer for exhibiting a pattern-or-practice of race discrimination, the Supreme Court was tasked with determining how to "make whole" victims of discrimination. The employer argued that an employee should be entitled to relief only if "he was an actual victim of the company's discriminatory practices" and that an employee who had not applied for the specific job in question could not be granted retroactive relief. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 357 (1977). The Court disagreed and concluded that "failure to apply for a job is

not an inexorable bar to an award of retroactive [relief]." *Id.* at 364. "When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a *futile gesture* he is as much a victim . . . as is he who goes through the motions of submitting an application." *Id.* at 365–66 (emphasis added).[2] In applying the futile gesture doctrine, courts have looked to whether the wrongful conduct itself made applying for a particular position futile, such as where individuals are deterred from applying to a position because they "are unwilling to subject themselves to the humiliation of explicit and certain rejection." *Id.* at 365. It is the nonapplicant's "not always easy burden of proving that he would have applied for the job had it not been for [the employer's wrongful conduct]." *Id.* at 368. "When this burden is met, the nonapplicant is in a position analogous to that of an applicant . . . ." *Id.*

Here, however, even if we assumed that the futile gesture doctrine could excuse a whistleblower's failure to

---

[2]    Generally, the futile gesture doctrine has been applied in Title VII and other discrimination contexts. *See, e.g.*, *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (race discrimination); *Davoll v. Webb*, 194 F.3d 1116, 1132–33 (10th Cir. 1999) (disability discrimination); *Brown v. McLean*, 159 F.3d 898, 902–04 (4th Cir. 1998) (race and sex discrimination); *Gutowsky v. Cnty. of Placer*, 108 F.3d 256, 260–61 (9th Cir. 1997) (sex discrimination); *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993) (age discrimination); *Terry v. Cook*, 866 F.2d 373, 378 (11th Cir. 1989) (political discrimination); *United States v. E. Tex. Motor Freight, Inc.*, 643 F.2d 304, 307 (5th Cir. Unit A Apr. 1981) (race discrimination); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1017 (2d Cir. 1980) (race discrimination).

apply for a position,[3] the MSPB was correct in concluding that Ms. Gharati "is not entitled to a permanent position." *Board Decision*, 2022 WL 2254009, at *5. Ms. Gharati has not met her burden under the futile gesture doctrine to demonstrate that applying for any of the ten vacancies would have been futile. Besides Ms. Gharati's subjective "belie[f] that she did not have a realistic chance of being selected" for the vacancies because "she was in active litigation with the [Army]," Appellant's Br. 10, 17, her briefing (including the supplemental briefing ordered by this court) fails to demonstrate that it would have been futile for her to apply. For example, she provides no record citations or evidence indicating that her application awaited "certain rejection" due to a wrongful reason. *See Int'l Bhd. of Teamsters*, 431 U.S. at 365. In fact, there is reason to doubt whether applying would have been futile. For instance, she admits that, upon her resignation, her employment record at the Army did not contain any mention of her whistleblowing activity in Afghanistan. Transcript of Record at 17–18, *Gharati v. Dep't of the Army*, No. AT-1221-13-4692-C-1 (M.S.P.B. May 2, 2017). Ms. Gharati has not presented any argument, let alone evidence, that had she applied for one of the vacancies, anyone reviewing her application would have been aware of any whistleblowing activity or whether or why there was a reasonable basis for her to conclude that her whistleblowing activity would have foreclosed her from being selected for one of the vacant positions, such that applying for the vacancies would have been futile. On these facts, Ms. Gharati has failed to demonstrate that applying for these vacancies would have

---

[3]    Certainly, the more straightforward course of action for Ms. Gharati would have been to apply for one or more of these positions, and if not selected because of her whistleblowing activity, to file another reprisal claim. *See Board Decision*, 2022 WL 2254009, at *5; Appellee's Supp. Br. 3.

been futile and has, therefore, not met her burden as a non-applicant to show that she is "in a position analogous to that of an applicant," such that retroactive relief is still proper. *Int'l Bhd. of Teamsters*, 431 U.S. at 368. And since Ms. Gharati has not demonstrated futility on the record before us, then she has not shown that "but for the [Army's] wrongful actions she would have been selected for a permanent position" as was her burden. Appellant's Br. 16.

We thus conclude that the MSPB did not err in determining that Ms. Gharati is not entitled to a permanent position.

## III

Ms. Gharati further argues that "back pay and benefits are not the same as employment," which appears to be asserted as an additional ground for seeking retroactive relief. Appellant's Br. 18–19. We find this argument unpersuasive. Ms. Gharati was paid for 42 months of back pay from her resignation date (November 30, 2012) through what would have been the end of her term contract (May 20, 2016). Although she does not dispute the calculation of back pay for this period, Ms. Gharati argues that pay alone does not make her whole because "her lack of actual employment in her profession deprived her of many benefits." Appellant's Br. 19.

Ms. Gharati was hired for a term contract and was paid for the entirety of that term contract. We therefore agree with the MSPB that, under these circumstances, reinstating Ms. Gharati "to the term appointment for the 42 months at issue would allow the appellant to benefit twice from the administrative judge's order." *Board Decision*, 2022 WL 2254009, at *6.

## CONCLUSION

We have considered Ms. Gharati's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the MSPB's grant of the Army's petition for

review and dismissal of Ms. Gharati's petition for enforcement.

**AFFIRMED**