*1355 BARKETT, Circuit Judge.
In this action, based on 42 U.S.C. § 1983, alleging dismissal based on the exercise of protected speech and association, plaintiffs, former deputy sheriffs in the Broward County Sheriffs Office, appeal the district court’s summary judgment in favor of Ronald Cochran, Sheriff of Broward County. The district court found that the deputies had been fired because of political affiliation. The court then concluded that under Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and Terry v. Cook, 866 F.2d 373 (11th Cir.1989), political affiliation was an appropriate requirement for the position of deputy sheriff, and granted Cochran’s motion for summary judgment.
Defendant Ronald Cochran, a Democrat, was elected Sheriff of Broward County in a contest with a Republican candidate who had defeated incumbent Sheriff Nick Navarro in the Republican primary. The plaintiffs, appointed to their deputy sheriff positions by Navarro, actively supported him in the primary election. They allege that they were dismissed from these positions in retaliation for their political activities on behalf of Navarro and for their familial association with a former opponent of Sheriff Cochran, violating their First Amendment rights to political speech and political and intimate association.
We review grants of summary judgment de novo, applying the same legal standard that the district court used. McCabe v. Sharrett, 12 F.3d 1558, 1560 (11th Cir.1994). Summary judgment is appropriate if, after examining the entire record, the court concludes there is no genuine issue of material fact. Fed.R.Civ.P. 56(c).
Plaintiffs claim that their dismissals violated political speech, familial association, and political affiliation or association rights protected by the First Amendment. Plaintiffs can avoid summary judgment by pointing to evidence in the record which, if credited, would permit a rational fact-finder to conclude that their conduct was constitutionally protected and that the protected conduct was a substantial factor in their dismissals. Mt. Healthy City School District Board of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
Plaintiffs have asserted little more than the fact of their familial relationship to Cochran’s alleged political nemesis, Leo Callahan, to support their view that this relationship was a substantial or motivating factor in their dismissals. As a result, they have failed to create a question of material fact which would warrant presentation of their familial association claim to a fact-finder; summary judgment on that claim, therefore, was appropriate. We turn now to plaintiffs’ claims that their dismissals violated their First Amendment speech and association rights.
It is well settled that an individual is not stripped of First Amendment rights simply by virtue of government employment. “Absent some reasonably appropriate requirement, government may not make public employment subject to the express condition of political beliefs or prescribed expression.” O’Hare Truck Service, Inc. v. City of Northlake, — U.S. -, -, 116 S.Ct. 2353, 2357, 135 L.Ed.2d 874 (1996). In fashioning legal standards for evaluating which restrictions are “reasonably appropriate,” the Supreme Court has developed two lines of inquiry: the Elrodr-Brantl standard for discrimination based on political affiliation and a balancing test for discrimination based on political speech. See Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). See also Bd. of Ciy. Com’rs, Wabaunsee County, KS. v. Umbehr, — U.S. -, -, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996) (collecting cases).
The Supreme Court first addressed the issue of political affiliation as a legitimate employment criterion in Elrod v. Bums. The case involved a newly elected Democratic sheriff who fired various Republican employees in the sheriffs office and held that politically motivated discharges were unconstitutional because they amounted to a denial of a government benefit based on an uncon *1356 stitutional condition, namely the coercion of an employee’s freedom of association. While the government might legitimately use such practices in some circumstances, the strict scrutiny applicable to infringements of First Amendment rights requires the government to show that the practice furthers a vital government interest by the least restrictive means. The plurality[1] reasoned:
if conditioning the retention of public employment on the employee’s support of the in-party is to survive constitutional challenge, it must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights.
Id. at 362, 96 S.Ct. at 2685. Thus, patronage dismissals were not the least restrictive means of achieving this end because public employees could be discharged for insubordination or poor job performance when those bases in fact exist. Id. at 364-67, 96 S.Ct. at 2685-86. Likewise, the interest of preserving the democratic process and partisan politics does not warrant such dismissals because “patronage [also] is an effective impediment to associational and speech freedoms ... the gain to representative government provided by the practice of patronage, if any, would be insufficient to justify its sacrifice of First Amendment rights.” Id. at 369-70, 96 S.Ct. at 2688 (emphasis added).
Also incapable of fully supporting patronage dismissals is the notion that new administrations in a representative government need the political loyalty of employees in order to avoid potentially obstructionist tactics. “The justification is not without force, but is nevertheless inadequate to validate patronage wholesale ... Limiting patronage dismissals to policymaking positions is sufficient to achieve this governmental end.” Id. at 367, 96 S.Ct. at 2687. In delineating the exception, it was recognized that:
No clear line can be drawn between policymaking and nonpolicymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policy-making position. The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives. An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policy-making position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals.
Id. at 367-68, 96 S.Ct. at 2687. Finally, the plurality in Elrod held that the government had not met its burden in demonstrating an interest sufficient to override an encroachment on the First Amendment rights of a public employee, and that close cases should be resolved in favor of the employee. Id. at 368, 96 S.Ct. at 2687.
In Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the majority of the Court held that the dismissal of two assistant public defenders, who were among six threatened with dismissal from a staff of nine because they were Republicans, violated the Fust Amendment. In its holding, the Court refined the applicability of the First Amendment to policymaking positions:
[t]he ultimate inquiry is not whether the label ‘policymaker’ or ‘confidential’ fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.
Id. at 518, 100 S.Ct. at 1295.
Branti recognized that circumstances may exist in which “a position may be appropriately considered political even though it is neither confidential nor policymaking in character” but that “party affiliation is not necessarily relevant to every policymaking or confidential position.” Id. at 518, 100 S.Ct. at 1294.
*1357 Shortly after Branti was decided, this court decided Terry v. Cook. In Terry, a newly elected sheriff refused to reappoint any of the deputy sheriffs, clerks, jailers or process servers who served under his predecessor. The court held that “loyalty to the individual sheriff and the goals and policies he seeks to implement ... is an appropriate requirement for the effective performance of a deputy sheriff.” Id. at 377. The court described deputy sheriffs as the “alter ego” of the sheriff and reasoned that the “closeness and cooperation required between sheriffs and their deputies necessitates the sheriff’s absolute authority over their appointment and/or retention.” Id. at 377. The court concluded that deputy sheriffs were susceptible to patronage dismissals.
In this case, although plaintiffs allege that their dismissals were motivated by political association (among' other factors), they argue that Terry is not controlling because Cochran has engaged in selective dismissals, and not the “wholesale” or “en masse” dismissals conducted in Terry. We are not persuaded by this distinction. While Terry did involve the dismissal of the entire deputy sheriff force, that factor is not essential to its broad holding that sheriffs have the authority to fire their deputies for political affiliation reasons. Accordingly, we find Terry controlling, although we also believe that Terry should be revisited en banc because it may be viewed as inconsistent with Branti.
Branti flatly rejects the notion that policy makers qua policy makers should be subject to a political affiliation requirement; rather, it demands a showing that the position, poli-cymaking or otherwise, implicates partisan political concerns in its effective functioning. Under Branti, political fealty could be required of deputy sheriffs whose job duties involved handling information of a partisan political nature. But other deputy sheriffs, involved in investigating crimes, patrolling roads, or transporting prisoners, may never deal with such sensitive information or confidences. Terry could be viewed as ignoring this distinction, and offering no explanation for how the duties of individual deputy sheriffs relates to party affiliation.[2]
The Terry court’s confusion in applying the Elrodr-Branti standard is not surprising as there appears to be a conflict among the circuits in patronage cases arising in sheriffs’ offices. After examining the various tasks of deputy sheriffs, courts in the Third, Fourth, Fifth, and Tenth Circuits have ruled that those job functions do not require political affiliation with the elected sheriff for their effective performance. Thus, deputy sheriffs are entitled to protection from patronage dismissals.[3] In addition to this circuit, only the Seventh Circuit has held that deputy sheriffs may be hired or fired on political grounds.
In Upton v. Thompson, 930 F.2d 1209 (7th Cir.1991), cert. denied, 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992), and in Dimmig v. Wahl, 983 F.2d 86 (7th Cir.), cert. denied, 510 U.S. 861, 114 S.Ct. 176, 126 L.Ed.2d 135 (1993), the Seventh Circuit held that political affiliation was an appropriate requirement for the job of deputy sheriff because a sheriff’s political fortunes were so closely tied to the job performance of deputy sheriffs. This reasoning was adopted from an earlier Seventh Circuit ease, Tomczak v. City of Chicago, 765 F.2d 633, 641 (7th Cir.1985).[4]
*1358 Notwithstanding that plaintiffs may be entitled to a factual determination under Bran-ti as to whether their positions implicate partisan political concerns in their effective functioning, we read their claim as precluded by Terry. We are bound by that prior panel decision which only the en banc court can reverse.
Plaintiffs also allege that, rather than mere political affiliation, other conduct protected by the First Amendment prompted their dismissals. Specifically, plaintiffs asserted in their complaint that they “participated in public political activity in support of Navarro on several occasions ... and contributed personal funds to Navarro’s campaign.” This allegation simply conveys plaintiffs’ political affiliation. Had there been allegations that the expressions involved more than bare statements of support for a candidate, the claim would deserve a more detailed analysis under Pickering,[5] At this point, as in Branti the only interest at issue is the right of political affiliation which, that case teaches us, cannot be overcome except by a determination that affiliation is essential to the employee’s effectiveness. The record supports the district court’s finding that plaintiffs “were terminated on the basis of their loyalty and support for the former sheriff. This is a classic Elrod-Branti political patronage dismissal case.”
Under Terry v. Cook, defendant was entitled to a grant of summary judgment.
AFFIRMED.

. Justice Brennan wrote an opinion, joined by Justices White and Marshall. Justice Stewart wrote a separate opinion concurring only in the judgment that was joined by Justice Blackmun.

. We note that the Terry court properly applies Branti when it turns to the claims brought by the other personnel in the sheriff's office: "This is a determination that depends upon the actual responsibilities of each position and the relationship of each to the sheriff.” Id. at 378.

. Burns v. County of Cambria, 971 F.2d 1015, 1022 (3rd Cir.1992), cert. denied, 506 U.S. 1081, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); Jones v. Dodson, 727 F.2d 1329 (4th Cir.1984); Barrett v. Thomas, 649 F.2d 1193, 1201 (5th Cir.1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982); Francia v. White, 594 F.2d 778 (10th Cir.1979).

.Application of the Seventh Circuit's broad test has led to results far afield from Branti. In Americanos v. Carter, 74 F.3d 138 (7th Cir.1996), for example, the Seventh Circuit concluded that every Deputy Attorney General in Indiana's Attorney General’s Office was subject to patronage dismissal because each had "meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals and implementation.” Id. at 141-42. Americanos appears to lie in sharp contrast to the facts of Branti itself, where the Supreme Court held that assistant public defenders were protected from patronage dismissal, even when the staff consisted of only nine public defenders. *1358 We further contrast Americanos with Justice Powell’s dissent in Branti, where he questioned whether, under the holding in Branti, the United States Attorney for each district, not Assistant U.S. Attorneys, could be dismissed for political reasons:
[I]t would be difficult to say, under the Court's standard, that “partisan” concerns properly are relevant to the performance of the duties of a United States Attorney.
445 U.S. at 524, 100 S.Ct. at 1298 (Powell, J. dissenting). Although Branti may permit the dismissal of the U.S. Attorney of a district and some of bis or her chief deputies, we believe Branti would not permit the dismissal of all Assistant U.S. Attorneys for patronage reasons.

. More precisely, had there been further allegations that (1) plaintiffs had engaged in expressive conduct beyond mere manifestation of political affiliation; and (2) the conduct was a "substantial” or "motivating” factor in the dismissals, their claim would warrant a Pickering analysis.