Corine ANDERSON–FREE and Van
Tony Free, III, Plaintiffs,

v.

Roosevelt STEPTOE, et al, Defendants.

No. Civ.A. 95–D–635–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 26, 1997.

Stephen R. Glassroth, Joseph Peter Van Heest, Montgomery, AL, for plaintiff.

Solomon S. Seay, Jr., Tyrone C. Means, Kenneth L. Thomas, Mark Englehart, Anita L. Kelly, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants' motion for summary judgment, filed June 20, 1997. Plaintiffs filed a response on July 8, 1997. After careful consideration of the arguments of counsel, relevant case law and the record as a whole, the court finds that Defendants' motion is due to be denied.

### JURISDICTION

Pursuant to 28 U.S.C. §§ 1331 and 1343, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

### FACTUAL BACKGROUND

Plaintiff Corine Anderson–Free ("Anderson–Free") was hired in 1989 as an instructor in the School of Music at Alabama State University ("ASU"), a public university located in Montgomery, Alabama. She was employed as an instructor through a series of one-year contracts from 1989 to 1993, placing her on a probationary track toward tenure. Throughout her employment, she received above average evaluations. Pl.'s Ex. F, attached to Response to Def.'s Mo. for Summ. J.[1] In 1990, Anderson–Free married Plaintiff Van Tony Free, III ("Free"), who was and remains a tenured assistant professor at ASU.

---

1. In construing Plaintiffs' exhibits in a light most favorable to the non-moving party, the court will assume, without deciding, that these writings are authenticated under the Federal Rules of Evidence.

Beginning in 1990, Free was an outspoken member of the Faculty Senate, often commenting on issues concerning the University and the community. He was instrumental in establishing and organizing a chapter of the American Federation of Teachers ("AFT") labor union on ASU's campus. Compl. ¶ 18, 20. Anderson–Free assisted her husband in bringing the union to ASU.

In the Spring of 1993, Clayton Smith, a student, received two grades of "incomplete" from Anderson–Free. Affid. of Corine Anderson–Free, attached as Ex. A to Response to Def.'s Mo. for Summ. J. (Hereinafter "Anderson–Free Affid.") at ¶ 5. One of these grades was given for Smith's Senior Recital, which Anderson–Free did not attend, but rather viewed on a videotape recorded by her husband, Plaintiff Free. Anderson–Free Affid. at ¶ 6. On May 6, 1993, Smith filed a grievance with Dean Hager[2] challenging these grades. On May 7, 1993, Anderson–Free, Smith and Dean Hager participated in an attempt to mediate the grade dispute. Anderson–Free Affid. at ¶ 8. When this attempt failed, Anderson–Free was directed to attend a hearing of the appeals committee. On May 7, 1995, the committee met to hear Smith's grievance and determine whether to recommend changing the grades. Present at the meeting were two faculty members who had both previously approved a performance Smith was required to pass before being allowed to perform his Senior Recital. Anderson–Free Affid. at ¶ 9. Also present were Dean Hager, Smith, and two student observers.

Anderson–Free objected to the presence of the two faculty members who had previously approved Smith's performance, as she felt that they were predisposed to recommend changing the student's grades. Anderson–Free Affid. at ¶ 9. Although Free appeared at the meeting with his wife, Dean Hager refused to allow him to remain at the hearing and requested that he leave. Affidavit of Thomas Hager, Attached as Ex. 2 to Def.'s Mo. for Summ. J. (Hereinafter "Hager Affid.") at ¶ 14. Anderson–Free chose to leave

the meeting, as well. Compl. ¶ 29, 30. The hearing progressed and the committee resolved to change Smith's grades from "Incompletes" to a "C" and a "Pass."

On May 6, 1993, Free wrote a memorandum objecting to the position taken by the School of Music and ASU's administration's on the grade-change and criticizing the lack of communication between the faculty within the School of Music. Affidavit of Van Tony Free, III, attached as Ex. B to Response to Def.'s Mo. for Summ. J. (Hereinafter "Free Affid.") at ¶ 8. The memorandum, which was critical of what Free perceived to be ASU's intent to graduate unqualified, poorly prepared students, threatened to disclose his criticism to other educational institutions. *Memorandum*, dated May 6, 1993, from Van Tony Free III, attached as Ex. 6 to Def.'s Mo. for Summ. J. (Hereinafter *"Memo"*).

On or about May 17, 1993, Anderson–Free was notified that her contract for the upcoming academic year had not been renewed, and she filed a grievance with the ASU Committee on Faculty Grievances. The committee found that Hager and Defendant Roosevelt Steptoe ("Steptoe"), the Vice President of Academic Affairs at ASU, had failed to follow proper procedures in their decision not to renew Anderson–Free's contract. Memorandum from The Committee on Faculty Grievance, dated February 3, 1994, attached as Ex. I to Response to Def.'s Mo. for Summ. J. (Hereinafter "Faculty Grievance Memo"). The committee also recommended to Defendant Clifford Baker ("Baker"), Interim President of ASU, that Anderson–Free's non-renewal be rescinded. Faculty Grievance Memo. Baker, however, elected not to follow the committee's recommendation and, instead, upheld Hager and Steptoe's decision not to renew Anderson–Free's contract.[3]

On May 12, 1995, Plaintiffs filed a complaint alleging several claims under 42 U.S.C. § 1983 against Defendants in both their indi-

---

**2.** Thomas Hager served as the Dean of the School of Music at Alabama State University from 1991 until May, 1993.

**3.** Baker notified Anderson–Free of his decision on or about April 29, 1994. *See* Pls.' Br. at 15–16.

vidual and official capacities.[4] On February 27, 1997, the court entered a Memorandum Opinion and Order dismissing most of Plaintiffs' claims, leaving only two official capacity claims for which only prospective injunctive relief is available. *See* Memo.Opin. & Ord. (Feb. 27, 1997) at 27 n. 12. Anderson–Free's claim alleges that Defendants' decision not to renew her contract was due to her relationship with her husband, Free, and, therefore her right to intimate association was violated. Free's claim asserts that Defendants' non-renewal of Anderson–Free's contract was an act of retaliation against Free for exercise of his free speech rights.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.; see also Anderson,* 477 U.S. at 249.

## DISCUSSION

Section 1983 of Title 42 of the United States Code creates a mechanism for recovering monetary damages from and securing injunctive relief against governmental actors and entities whose actions under color of state or local law deprive a plaintiff of rights,

---

4. Specifically, Plaintiffs alleged violations of their speech and association rights under the First Amendment and violation of their rights to procedural and substantive due process (including their right to marital privacy) under the Fourteenth Amendment.

privileges, or immunities secured by the United States Constitution or federal statutes. Plaintiffs brings their claims under 42 U.S.C. § 1983, alleging that their constitutional rights were violated.

■ Section 1983 itself creates no substantive rights; rather, it provides a remedy for deprivation of federal rights established elsewhere. *See Barfield v. Brierton,* 883 F.2d 923, 934 (11th Cir.1989). Thus, the court first must determine whether Plaintiffs have asserted a cognizable claim under § 1983. *See Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir.1994).

Plaintiffs allege that Defendants violated their First Amendment rights, made applicable to the states by the Fourteenth Amendment. Free alleges that the Defendants violated his First Amendment right to freedom of speech by electing not to renew Anderson–Free's contract in retaliation for Free writing the May 6, 1995 memorandum. Anderson–Free asserts that her First Amendment right to intimate association was violated because Defendants based the decision of non-renewal of her contract on her intimate association (i.e. her marriage) with Free.

### A. *Free's First Amendment Right to Freedom of Speech*

■ "[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Id.* at 141. That protection, however, is limited by the state's need to preserve efficient governmental functions. *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989).

■ The Eleventh Circuit has articulated a four-part test for determining whether an employee has been retaliated against for engaging in protected speech. *See Watkins v. Bowden,* 105 F.3d 1344, 1352 (11th Cir.1997) (citing *Morgan v. Ford,* 6 F.3d 750, 753–54 (11th Cir.1993)). First, the employee must demonstrate that the expression addresses a matter of "public concern." *Id.* Second, the court must weigh the employee's First Amendment interests against the interests of the state, as an employer, in promoting the efficiency of the public services it provides through its employees. *Id.* Next, the court must determine whether the employee's speech was a substantial motivating factor in the employer's decision to demote or discharge the employee. *Id.* Finally, if the employee shows that the speech was a substantial motivating factor in the employment decision, the state may still avoid liability by demonstrating that it would have reached the same adverse decision with respect to the employee's job even in the absence of protected speech. *Id.*

Plaintiff Free alleges that Defendants infringed upon his right of free speech, guaranteed to him under the First and Fourteenth Amendments to the United States Constitution. Specifically, Free alleges that Defendants elected not to renew Anderson–Free's contract in retaliation for Free's exercise of his free speech rights in writing the May 6, 1993 memo. Compl. ¶ 47.

■ In determining whether Free's First Amendment rights were violated, the threshold question for the court is whether Plaintiffs' speech constituted a matter of public concern. "The status of Free's speech is a question of law for the court, to be determined by an examination of the content, form, and context of a given statement, as revealed by the record as a whole." *Connick,* 461 U.S. at 147–48, 150 n. 10.

■ "Speech by members of an academic community, even when critical in nature, should not be easily denied constitutional protection." *Maples v. Martin,* 858 F.2d 1546, 1553 (11th Cir.1988). "[T]eachers whose speech directly affects the public's perception of the quality of education in a given academic system find their speech protected." *Id.* at 1553 (citing *Pickering,* 391 U.S. at 571). On the other hand, "speech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection." *Id.* at 1552. For example, criticism regarding salary levels, course assignments, course

syllabus, and tenure decisions are "matters relating to internal college affairs rather than to matters of political or social import—matters of public concern." *Id.* (quoting *Ballard v. Blount,* 581 F.Supp. 160 (N.D.Ga.1983), *aff'd,* 734 F.2d 1480 (11th Cir.1984)).

■ The court finds that Free has established this first element of a First Amendment retaliation claim. Free alleges that Defendants retaliated against him by terminating his wife's employment subsequent to his having written a memorandum criticizing ASU's grading and graduation policies. In this memorandum, sent to Hager and Steptoe, Free vocally and openly criticized ASU's policies, actions, and the administration of the School of Music. Specifically, Free criticized Hager's management of the department and the administration's position on the graduation of Clayton Smith. *See Memo.*

Free contends that these criticisms questioned matters of political and social concern applicable within the University and the community as a whole. Although much of his memorandum could be construed as speech critical of internal administrative matters, when the facts of this case are viewed in a light most favorable to the Plaintiffs, Free also appears to be questioning the educational standards of ASU and its School of Music. Free's memorandum questions the quality of students graduating from Alabama State University, a public institution. It states, "I sincerely hope that we resolve to graduate students that are unquestionably prepared." *See Memo.* The memorandum expresses concern about the reputation of the school in the larger community. Free discusses what he describes as a situation "that could possibly lead all of Alabama State's critics to declare, that they were right in justifying the incompetence of our graduates." *Id.* Finally, Free threatens to ask other educational institutions to evaluate the quality of the students graduating from Alabama State University. The memorandum clearly addresses matters of public concern. *See Johnson v. Lincoln Univ.,* 776 F.2d 443 (3rd Cir.1985) (finding that educational standards and accreditation are matters of public concern); *see also Maples v. Martin,* 858 F.2d 1546, 1553 (11th Cir.1988) (determining that issues such as poor student performance and preparation of students for careers touches upon matters of public concern).

Next, the court must weigh the employee's first amendment interests against the interests of the state, as an employer, in efficient service. Here, Free has a strong First Amendment interest in expressing his concerns about the quality of students graduating from ASU, which is both his alma mater and his employer. Defendant asserts no interest in stifling such speech. Consequently, the Defendants have no legitimate reason for preventing Plaintiff's speech. *See Walker v. Schwalbe,* 112 F.3d 1127, 1131 (11th Cir. 1997).

■ To survive summary judgment, the plaintiff must present enough evidence for a reasonable jury to conclude that the protected speech was a "substantial" or "motivating" factor in the employer's decision to terminate employment. *Beckwith v. City of Daytona,* 58 F.3d 1554, 1564 (11th Cir.1995). "Where causation is lacking, an employee's claim of retaliatory discharge must fail and it is unnecessary to consider the other three elements." *Mize,* 93 F.3d at 742 (citing *Beckwith,* 58 F.3d at 1564). Thus, the court must determine whether Plaintiffs have established a causal connection between the memorandum and Defendants decision to terminate Anderson–Free's employment.

"It is neither possible nor desirable to fashion a single standard for determining when an employee has met her initial burden of demonstrating that a retaliatory intent was a 'substantial' or 'motivating factor' behind a government employment decision." *Beckwith,* 58 F.3d at 1564. However, the Eleventh Circuit does not interpret the standard set by the Supreme Court to be a "heavy one." *Id.* (citing *Waters v. Churchill,* 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994)). In *Waters,* the Court found that the plaintiff had created a material issue of disputed fact about the defendants' motivation in firing her when she presented evidence of her criticism of hospital policy, evidence of management "sensitivity" about the criticisms, and evidence of certain conduct which, viewed in the light most favorable to the plaintiff, showed management hostility. *Id.*

This conduct included a sudden drop in the plaintiff's performance evaluations, criticism of her relationship with a doctor, and a supervisor's unusual ordering of Plaintiff out of the operating room. *Id.*

Viewing the facts in this case in a light most favorable to the non-moving party, Plaintiffs have presented sufficient evidence to raise the inference that Free's memorandum resulted in Anderson–Free's termination. First, the record contains a sworn affidavit by Free in which he states that prior to Anderson–Free's termination, and subsequent to his having sent the memorandum at issue, he had a conversation with Defendant Steptoe in which Steptoe told him he should not have written the memo. Free Affid. ¶ 9. When Free asked Steptoe what he meant by that statement, Steptoe simply repeated that Free should not have written the memo. *Id.* Several days after this conversation, Free learned that Anderson–Free's contract not going to be renewed. *Id.* at ¶ 10. Finally, the record contains Anderson–Free's affidavit in which she states that her employment file contained a copy of the memorandum sent by her husband. Anderson–Free Affid. at ¶ 18.

The court recognizes that the evidence in the record is scant. There is very little to connect the memorandum to the non-renewal of Anderson–Free's contract. However, rights safeguarded by the First Amendment are among the most precious held by individuals. Furthermore, on a motion for summary judgment, the court is obligated to construe all facts in favor of the non-moving party, here the Plaintiffs. Accordingly, the court finds that an inference of a causal connection between Free's memorandum and the non-renewal of Anderson–Free's contract arises from these few facts. The court finds most convincing the fact that Anderson–Free's employment file contained a copy of the memorandum, although the court notes that Plaintiff does not clearly establish how Anderson–Free learned of the existence of the memo in her file, nor does the record indicate how the memo got there. Nevertheless, viewing the facts in a light most favorable to the Plaintiffs, the court finds that the existence of the memorandum in Anderson–

Free's file, in conjunction with Defendant's statement that Free should not have written the memo, raises the inference that the decision shortly thereafter to nonrenew Anderson–Free's contract is connected to Free's penning the memo.

Because Plaintiffs have established the first three elements of their First Amendment retaliation claim, summary judgment in favor of Defendants must be denied. Although the employer may still avoid liability by showing that Anderson–Free would have been terminated in the absence of a retaliatory animus. However, if the Plaintiffs produce enough evidence for a reasonable jury to conclude that a retaliatory animus substantially motivated Anderson–Free's termination, ASU could only rebut this showing by convincing the trier of fact that a legitimate reason justified the decision. *Beckwith,* 58 F.3d at 1564 (citing *Pullman–Standard v. Swint,* 456 U.S. at 289–90, 102 S.Ct. 1781, 72 L.Ed.2d 66) (issues of discriminatory intent and actual motivation are questions of fact for the trier of fact). Thus, the court finds that summary judgment on Plaintiff Free's First Amendment retaliation claim is due to be denied.

### B. *Anderson–Free's Intimate Association Claim*

Although there is no explicit right of association found in the First Amendment, the Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Parks v. City of Warner Robins,* 43 F.3d 609, 615 (11th Cir.1995) (quoting *Roberts v. U.S. Jaycees,* 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). Where plaintiffs allege they were retaliated against in violation of associational rights protected by the First Amendment, they may avoid summary judgment by pointing to evidence in the record which, if credited, would permit a rational fact-finder to conclude that their conduct was constitutionally protected and that the protected conduct was a substantial factor in their dismissal. *Cutcliffe v. Coch-*

*ran,* 117 F.3d 1353, 1355 (11th Cir.1997) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The court finds that, viewing the record in a light most favorable to Plaintiffs, this standard has been met, and Plaintiffs' intimate association claim survives summary judgment.

■ First, Plaintiff Anderson–Free's right to be married to Free is constitutionally protected. "At a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *McCabe v. Sharrett,* 12 F.3d 1558, 1563 (11th Cir. 1994) (citing *Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). Thus, the right to be married is a constitutionally protected freedom of association. *Roberts,* 468 U.S. at 617–18.

■ Next, the court must determine whether Anderson–Free has established that she has suffered some sort of adverse employment action for exercising her constitutionally protected right. *McCabe,* 12 F.2d at 1563. Clearly, Anderson–Free's non-renewal constitutes an adverse employment action. In addition to alleging an adverse employment action, however, Anderson–Free must also allege that she suffered the adversity *because* she exercised her right to be married or to stay married to Free. That is, she must demonstrate that her intimate associational activity was a substantial or motivating factor in the decision not to renew her contract. *Green v. City of Montgomery,* 792 F.Supp. 1238, 1252 (M.D.Ala.1992).

The Eleventh Circuit has articulated outer boundaries for establishing this inference. In *Cutcliffe,* the court held that the district court was correct in granting summary judgment where there was no matter of material fact which would warrant presentation of plaintiffs' familial association claim to a fact finder. 117 F.3d at 1355. In that case, the plaintiffs asserted "little more than the fact of their familial relationship to support that this relationship was a substantial or motivating factor in their dismissal." *Id.*

In *Walker v. Schwalbe,* 112 F.3d 1127, 1131 (11th Cir.1997), the Eleventh Circuit held that facts viewed in the light most favorable to the plaintiff showed that the defendant had motive to retaliate, plaintiff did not violate any applicable policy, and the adverse employment action appears illogical in light of the situation. Based on these facts, the court held that a fact finder could reasonably conclude that Plaintiffs were punished for exercising their constitutionally protected rights. *Id. See also Perry v. Sindermann,* 408 U.S. 593, 598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (overruling district court's grant of summary judgment for defendant where there was a genuine dispute as to whether employer refused to renew Plaintiff's teaching contract as a reprisal for the exercise of constitutionally protected speech rights).

Based on the record in the instant case, the court finds that Plaintiffs establish an inference that Anderson–Free's contract was non-renewed based on her intimate association with Free. Citing her consistently above-average performance evaluations, the grievance committee's recommendation, and her husband's vocal criticisms of both ASU and its School of Music, Anderson–Free alleges that her non-renewal, based on "insubordination," was really an attempt by Defendants to "punish her association" with Free. Compl. ¶ 46, 48–49. Furthermore, Anderson–Free states in her affidavit that her husband's memorandum, written to Defendants and criticizing ASU's policies, was placed in her employment file. Anderson–Free Affid. ¶ 18. Viewing these facts in a light most favorable to Plaintiff, the court finds that Anderson–Free has established enough of an inference that she was retaliated against because of her intimate association with Free to survive summary judgment. Hence, summary judgement is due to be denied on this claim.

## ORDER

For the reasons set forth above, it in CONSIDERED and ORDERED that Defendants' motion for summary judgment be and same is hereby DENIED.